IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Mike Nunez,<br><br>    Defendant. | No. CR 11-02217-TUC-DCB (BPV)<br><br>**REPORT AND RECOMMENDATION** |

On June 22, 2011, Defendant Mike Nunez was indicted for possession with intent to distribute less than 50 kilograms of marijuana (Doc. 5). On June 2, 2011, Defendant filed a Motion to Dismiss or Suppress Evidence (Doc. 15). The Government filed its Response on September 15, 2011. (Doc. 17)

The matter came on for Evidentiary Hearing before the Court on October 7, 2011. The Government called as a witness Tohono O'odham Police Department Detective Denver Calabaza. The Defendant called no witnesses. Thereafter, the Government filed a supplemental response. (Doc. 26)

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent review and consideration, enter an order DENYING Defendant's Motion to Dismiss or Suppress.

## **FACTS**

On May 25, 2011 at approximately 7:40 p.m., Tohono O'odham Police Department (TOPD) Detective Denver Calabaza was patrolling the Village of Sells with Detective Antone, and observed two sedans unknown to him traveling in tandem at a

high rate of speed through the intersection of Bobcat Circle and Quail Road. Detective Calabaza did not observe the gender of the driver of the second sedan as it passed him at this intersection. Detective Calabaza followed both sedans, and after the first sedan turned off the main road onto a dirt road, Detective Calabaza did not follow that vehicle, but was able to obtain the driver's license of the second vehicle they were following. Detective Antone called dispatch to run the license plate, and determined that the registered owner of the vehicle, Stephanie Viegas, had a TO Nation warrant for her arrest. Based upon this information Detective Calabaza initiated a traffic stop on the second sedan at 7:48 p.m.

The driver of the car was a male Hispanic, later identified as Defendant Mike Nunez. Detective Calabaza testified that he was not aware the driver was a male until he stopped the vehicle and shined a light on the driver. Nunez provided a driver's license, registration and proof of insurance to Detective Calabaza, who handed the driver's license to Detective Antone. Detective Antone radioed dispatch and informed Detective Calabaza that Nunez had a suspended license and warrants out of Pima County. Based upon that information, Detective Calabaza proceeded to arrest Nunez and place him in custody.

While Nunez was still in the vehicle Detective Calabaza asked him where he was coming from and who the registered owner of the sedan was. Nunez responded with a male's first name which was unknown to the detective, and a residence in Sells. Detective Calabaza requested consent to search the vehicle. Nunez did not consent.

Detective Antone called dispatch and requested two things: a cage patrol unit and a canine unit. The cage patrol unit was requested because the detectives were traveling in an unmarked vehicle that did not have a barrier between the driver's seat and the back seat. The detectives placed Nunez by their vehicle awaiting the arrival of the patrol unit. TOPD Officer Liston arrived with the patrol unit at approximately 8:06 p.m., at which

time the detectives walked Nunez, already handcuffed and out of his vehicle, and handed him to Officer Liston.

A United States Border Patrol canine unit arrived approximately two minutes after Officer Liston arrived. The detectives met with the border patrol agent, discussed the traffic stop, the detective's discussions with the driver, his actions, and the detective's suspicions, and requested that the Border Patrol agent have his canine perform a dog sniff. The dog sniff took approximately five minutes, and the detectives were informed that the dog alerted to two areas. Based on the alerts, the detectives visually searched the car more thoroughly, and opened up the trunk of the sedan. The trunk contained four large bundles of marijuana packaged in contact paper.

## DISCUSSION

Defendant first argues that he was arrested without probable cause. Defendant argues in his memorandum that there was no bad driving basis for the stop, and no information that the vehicle was involved in drug trafficking. (Doc. 15, at 4)

As discussed above, however, the traffic stop was lawful. The registered owner of the car had an active TO Nation warrant for her arrest. At the moment the detectives were aware of that information, the TOPD detectives had probable cause to pull the car over. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007). While the officers in *Diaz-Castaneda* could confirm that the physical description of the registered owner of the vehicle who was believed to be driving with a suspended license matched the physical description of the driver of the suspect vehicle in *Diaz-Castaneda*, in this case, Detective Calabaza was unable to determine, until he stopped the car, that the physical description of the registered owner did not match the physical description of the driver. The reason for this was the physical attributes of the vehicle Defendant was driving. The first car being driven in tandem was described as having "tinted windows."

(R.T 10/7/11, at 54) Though Detective Calabaza did not use that same physical description to describe the second car Defendant was driving, he did state that even with his lights illuminating the back window into the car, he was unable to tell how many passengers were in the car, much less what the occupants of the vehicle looked like, and whether the driver was male or female. (*Id*., at 55) The exhibits submitted of photos of the white sedan confirm that the windows were darkly tinted. This Court finds that until Detective Calabaza had affirmative grounds dispelling the valid justification for the traffic stop, the stop was valid. Whether or not the detectives observations of tandem driving, or not recognizing the vehicles from the area of Sells is irrelevant; the warrant for Ms. Viegas' arrest as the registered owner of the white sedan established a sufficient basis to initiate the traffic stop.

Defendant argued during the evidentiary hearing that the stop became invalid after detective's observed the driver of the car was male. (Reporter's Transcript (R.T. 10/7/11, at 65-66). After the hearing, Defendant did not challenge Detective Calabaza's initial decision to run a license plate check on the vehicle and, once he determined there were warrants for the registered owner, stop the vehicle; rather, Defendant argued that at the moment the Detective knew that the driver of the vehicle was not Stephanie Viegas, *i.e.*, the moment he observed the driver was male, and not female, the stop became an illegal detention.

Detective Calabaza's request that the Defendant give him his driver's license was not a search under the Fourth Amendment. "In the ordinary course, a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County*, 542 U.S. 177, 185 (2004). *See also INS v. Delgado*, 466 U.S. 210, 216 (1984) ("[Interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment

- 4 -

Seizure." ) Because Detective Calabaza's request did not implicate the Fourth Amendment, the argument that such a request was unlawful is without merit. Finally, the duration of the stop in this case was entirely justified by the outstanding warrant on the registered owner of the car and the ordinary inquiries incident to such a stop. Though "[a] seizure that is justified solely by the interest in issuing a [...] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), an "officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323 (2009).

Here, Detective Calabaza asked Defendant for his driver's license immediately upon stopping the vehicle, and handed the license directly to Detective Antone to radio dispatch and check for outstanding warrants. Though the Court does not know the exact amount of time it took to investigate Defendant's outstanding warrants, the sequence of events as conveyed by Detective Calabaza indicate the inquiry did not measurably extend the duration of the stop. In fact, the patrol car arrived to transport Defendant approximately 18 minutes after Detective Calabaza made the initial decision to stop Defendant. Thus, because the inquiries did not measurable extend the duration of the stop, this was not an unlawful seizure. Defendant argued in his memorandum that "it is apparent that the reason he was put in the patrol car under arrest was because he refused to consent to a search of the vehicle." (Doc. 15, at 4) The facts elicited at the evidentiary hearing do not support this contention. It is clear that the decision was made by Detective Calabaza to arrest the Defendant because he had two outstanding warrants and was driving on a suspended license.

Defendant next argues that the dog "sniff" and subsequent search was an unlawful

search incident to arrest. (Doc. 6, at 6; R.T. 10/7/11, at 66) The Government, however, does not rely on the legal justifications of a search incident to arrest and submits that *Arizona v. Gant*, 556 U.S. 332 (2009) is not controlling in this case.

> As applied to a traffic stop,
> "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citation omitted).

In *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), the Supreme Court made clear that a stop may become "unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." In this case, because Defendant was lawfully arrested, the time required to obtain the narcotics-detection dog is not at issue. Even if it had been at issue, the entire time, from the time the Detectives determined to make a traffic stop, to the time the narcotics-detection dog arrived, was 20 minutes. The Court finds that this was not an impermissible delay.

If a drug detection dog alerts for the presence of illegal narcotics, that alert provides probable cause to conduct a warrantless search pursuant to the automobile exception to the warrant requirement. *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.2000) (citing *United States v. Ross*, 456 U.S. 798, 807 (1982). If officers have probable cause to believe that the vehicle contains evidence of a crime, the officers may lawfully conduct a warrantless search of the entire vehicle and its contents. *Ross*, 456 U.S. at 825. An officer has probable cause to search if, in the totality of the

search incident to arrest. (Doc. 6, at 6; R.T. 10/7/11, at 66) The Government, however, does not rely on the legal justifications of a search incident to arrest and submits that *Arizona v. Gant*, 556 U.S. 332 (2009) is not controlling in this case.

> As applied to a traffic stop,
> "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citation omitted).

In *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), the Supreme Court made clear that a stop may become "unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." In this case, because Defendant was lawfully arrested, the time required to obtain the narcotics-detection dog is not at issue. Even if it had been at issue, the entire time, from the time the Detectives determined to make a traffic stop, to the time the narcotics-detection dog arrived, was 20 minutes. The Court finds that this was not an impermissible delay.

If a drug detection dog alerts for the presence of illegal narcotics, that alert provides probable cause to conduct a warrantless search pursuant to the automobile exception to the warrant requirement. *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.2000) (citing *United States v. Ross*, 456 U.S. 798, 807 (1982). If officers have probable cause to believe that the vehicle contains evidence of a crime, the officers may lawfully conduct a warrantless search of the entire vehicle and its contents. *Ross*, 456 U.S. at 825. An officer has probable cause to search if, in the totality of the

circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, the dog "sniff" of the exterior of the defendant's vehicle was not a search because such a "sniff" does not trigger the protections of the Fourth Amendment. The detectives only searched the trunk after the dog alerted to the trunk areas and as *Caballes* states, the dog's alert is sufficiently reliable to give the detectives probable cause to search the trunk of the defendant's car.

Defendant's reliance on *Arizona v. Gant*, 556 U.S. 332 (2009) is misplaced. *Gant* addressed the limits of law enforcement's right to search a vehicle incident to a recent occupant's lawful arrest. *Gant*, 556 U.S. at 1714. In *Gant*, the defendant was arrested for driving with a suspended license. *Id*. He was arrested outside of but near his vehicle. The officers did not have reason to suspect the vehicle contained any evidence related to the defendant's arrest for a suspended license. They searched the vehicle simply because the defendant was under arrest and was a recent occupant of the vehicle. Clarifying its ruling in *New York v. Belton*, 453 U.S. 454 (1981) and affirming its prior ruling in *Chimel v. California*, 395 U.S. 752 (1969), the Court found police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest. *Gant*, 556 U.S. at 1723.

In the case before this Court, the vehicle was searched because a drug detection canine alerted to the presence of illegal narcotics in the vehicle. Therefore, Defendant's vehicle was searched pursuant to the automobile exception to the warrant requirement. *United States v. Hatley*, 15 F.3d 856, 858 (1994). It was searched because agents suspected the vehicle itself contained the evidence of a crime.

## **RECOMMENDATION**

The Magistrate Judge recommends the District Court, after independent review,

DENY Defendant's Motion to Dismiss or Suppress (Doc. 15).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR11-02217-TUC-DCB**

Dated this 12th day of December, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge